RADOJCSICS *v*. OHIO STATE REFORMATORY.

(No. 76-0449-AD—Decided June 14, 1977.)

Court of Claims.

*Ms. Beverly Joan Radojcsics, pro se.*
*Mr. George F. Denton,* for defendant.

LALLY, DEPUTY CLERK. Plaintiff, Beverly J. Radojcsics, seeks to recover for damage to her automobile which occurred when the car, driven by her daughter, struck one of defendant's cows on Airport Road in Mansfield on the night of July 26, 1976. Defendant has also filed a counterclaim for the value of the animal.

Under R. C. 2743.03(D), the Rules of Civil Procedure are applicable in the Court of Claims "except insofar as inconsistent with this chapter." The court has never before had occasion to determine whether the counterclaim provisions of Civ. R. 13 are consistent with the statutory design of the administrative determination process.

Although R. C. 2743.03(A) states that "the court" has "full equity powers in all actions within its jurisdiction and may entertain and determine all counterclaims, crossclaims, and third party claims," it is our opinion that this language refers solely to the jurisdiction of a judge of the Court of Claims in a conventional civil action, rather than the much more limited jurisdiction of the clerk (or deputy clerk—see R. C. 3.06 and C. C. R. 6) in administrative determinations under R. C. 2743.10.

The nature of the claim against the state which the clerk may decide is considerably different than that of a

counterclaim by the state. For instance, although in waiving sovereign immunity, the legislature could deny any right to trial by jury against the state (R. C. 2743.11), the same section recognizes that parties retain the right to a jury trial for claims "not against the state." Thus, since nothing involved in filing an administrative determination amounts to an express waiver of any rights relating to a possible counterclaim, a plaintiff (counterclaim defendant) could legitimately demand a jury trial on the counterclaim, a proceeding which is obviously far beyond the intended scope of the clerk's powers under R. C. 2743.10. Similarly, while the state can condition its waiver of sovereign immunity by requiring that some claims against the state be administratively determined (R. C. 2743.10[A]), the lack of any express waiver by the plaintiff relating to the counterclaim indicates that she retains the right to have it determined by a judge (a right which, unlike the right to a jury trial, she need not demand).

Not only does the differing nature of the counterclaim and the original claim against the state militate against a conclusion that the clerk may determine both of them, but the very nature of the administrative determination process may also do so. This is suggested by R. C. 2743.10(E) which states that an administrative determination against the state is to be processed for payment under R. C. 2743.19 "*as if* it were a judgment" (emphasis added). Therefore, although the state has consented to pay when directed by the clerk or deputy clerk and although R. C. 2743.10(D) provides that the claimant may not commence a subsequent action on the same facts in the Court of Claims, the "as if" language of R. C. 2743.10(E) implies that an administrative determination requiring payment by an individual might not possess the binding force of a judgment.

Further, the statute expressly limits the monetary jurisdiction of the clerk for claims against the state (R. C. 2743.10[A]). In light of this, it is exceedingly unlikely that the General Assembly intended to silently endow him with unlimited counterclaim jurisdiction.

With this absence of jurisdiction in the clerk, there are two plausible alternatives for dealing with the counter-

claim: (1) judicial determination by a judge of the Court of Claims or (2) dismissal. An apparent third alternative, determination by a judge of both the counterclaim and the original claim against the state, is barred by the fact that, as previously stated, some claims against the state must be administratively determined and because, in the opinion of the court, R. C. 2743.10 creates a statutory right to have other claims within the monetary jurisdiction of the clerk administratively determined if such an election is timely made. Among the financial and procedural advantages which place this election above the court's desire for administrative ease are the fact that the technical rules of evidence do not apply and the statutory requirement that the procedure involved be "informal and designed to accommodate persons not skilled in the law" (R. C. 2743.10 [C]). Further, the statute clearly contemplates an essentially "paper" proceeding which would avoid the often prohibitive expense of physically defending the action in Columbus.

In contrast to this statutory scheme which evidences a legislative intent of *encouraging* the filing of small claims against the state, the judicial determination of these counterclaims could often *deter* such filings since, if the potential claimant did not commence an action in the Court of Claims, the state, if it chose to pursue its claim against him, would have to venue it in accordance with Civ. R. 3. The claimant, therefore, might well decide that the value of pursuing a small claim against the state was outweighed by the potential inconvenience and expense of defending a possible counterclaim in a formal judicial proceeding in Columbus. (This situation is, of course, far different than that of the plaintiff who files a conventional civil action with the Court of Claims, since he expects a formal proceeding before a judge in any event.)

In addition, this practice would seem inconsistent with the appellate process for administrative determinations since the court could serve as trier of fact for the counterclaim (when no jury was demanded) and then as the sole appellate tribunal for the claim against the state arising from the same occurrence or transaction (R. C. 2743.10[D]).

While it might be argued that the state's waiver of sovereign immunity could be so conditioned as to make the normal procedural components of an appeal nothing more than mere gratuities, this departure from conventional notions of the impartiality of the appellate function should not be implied without a much clearer statement of the intent of the legislature.

We, therefore, conclude that sections (A) through (F) and (J) of Civ. R. 13 are inconsistent with R. C. 2743.10, and that this counterclaim should be dismissed without prejudice to refiling in a court of competent jurisdiction if the Department should so choose. Such a procedure should not be any more likely to produce inconsistent results than judicial determination by the Court of Claims. In each instance, the counterclaim would be subject to trial by jury, and in each instance, the counterclaim and the claim against the state would have different final appellate tribunals (R. C. 2743.10[D] and 2743.20). Thus, this mild departure from modern notions of avoiding a multiplicity of suits on the same subject matter seems justified in light of its value in effectuating the purposes of the administrative determination process.

Although R. C. 951.02 appears to impose strict liability upon the owner of an animal which is permitted to run at large on a public road, it has been interpreted as protecting only against trespasses and trespass-related injuries, *Bolton* v. *Barkenhurst* (1973), 40 Ohio App. 2d 353. Thus, the ordinary negligence standard applies in the present case.

Since plaintiff has not demonstrated that defendant had notice of the escape or of any defect in the fence prior to the accident and since she has failed to show that the fence was improperly maintained or in any way inferior to those in general use for similar purposes, the court must conclude that she has not proved any negligence on the part of the defendant. With this resolution of the negligence issue, the court need not decide whether the driver's conduct amounted to contributory negligence imputable to plaintiff under R. C. 4507.07.

*Complaint and counterclaim dismissed.*